FILED 

CHRISTOPHER W. HELLMICH
chellmich@pattonboggs.com
California Bar No. 224169
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
Telephone: 202-457-6000
Facsimile: 202-457-6315

COUNSEL FOR PLAINTIFFS
F. JAY CRAWFORD AND
VIRGINIA CRAWFORD

2011 APR 22 PM 1:50

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY FAX

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| F. JAY CRAWFORD and VIRGINIA CRAWFORD, <br><br>Plaintiffs, <br><br>v. <br><br>DELTA SCIENTIFIC CORPORATION, FRAMACO INTERNATIONAL, INC., and OVERSEAS OPERATIONS, INC., <br><br>Defendants. | Case No. CV10 2960 AHM (JCx) <br><br>**FIRST AMENDED COMPLAINT** |
| DELTA SCIENTIFIC CORPORATION, <br><br>Third-Party Plaintiff, <br><br>v. <br><br>FRAMACO INTERNATIONAL, INC., OVERSEAS OPERATIONS, INC., RE & RE, TANTLEY RAMBELOSON, and EMBASSY ASSOCIATION SERVICES FOR EMPLOYEES, <br><br>Third-Party Defendants. | |

1

FIRST AMENDED COMPLAINT

Now come Plaintiffs F. Jay Crawford ("Mr. Crawford") and Virginia Crawford ("Mrs. Crawford"), by their counsel Patton Boggs LLP, bringing this action against Defendants Delta Scientific Corporation ("Delta"), Framaco International, Inc. ("Framaco"), and Overseas Operations, Inc. ("Overseas"), and for their cause, state:

## I. Preliminary Statement:

1. On May 30, 2008, Plaintiff F. Jay Crawford suffered severe injuries when a 1,700-pound steel Delta barrier (together with all associated components, the "Delta Barrier") located at the "B" security gate of the U.S. Embassy in Paris, France (the "B Gate") crushed Mr. Crawford's right foot, ankle, and leg (hereinafter referred to as Mr. Crawford's "foot"), rendering him permanently disabled. Plaintiffs hereinafter refer to the May 30, 2008 events causing their injuries as the "Incident."

2. The Delta Barrier at the B Gate was operated by a two-button operational control mechanism, which at the time of the Incident, Defendants knew was defective due to, among other reasons, its inability to stop or pause the opening and closing of the Delta Barrier. Defendants also knew or should have known that safer alternative designs and/or alternative products existed. In fact, on information and belief, Delta had already redesigned the operation control mechanism of the Delta Barrier because days after the incident, Defendants replaced the two-button operational control mechanism with a new safer four-button unit that would have allowed the security guard to stop the Delta Barrier from crushing Mr. Crawford's foot.

## II. Parties:

3. Plaintiffs F. Jay Crawford and Virginia Crawford are individual citizens of Mobile, Alabama.

4. Defendant Delta Scientific Corporation ("Delta") is a corporation organized in the state of California with its principal place of business at 40355 Delta Lane, Palmdale, CA 93551.

5. Defendant Framaco International, Inc. ("Framaco") is a corporation organized in the state of New York with its principal place of business at 800 Westchester Avenue, Suite S-430, Rye Brook, N.Y. 10573.

FIRST AMENDED COMPLAINT

6. Defendant Overseas Operations, Inc. ("Overseas") is a corporation organized in the state of California with its principal place of business at 222 Avenida del Norte, Suite 201, Redondo Beach, CA 90277.

### III. Jurisdiction and Venue:

7. This court has subject matter jurisdiction under 28 U.S.C. §1332(a) because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs are citizens of Alabama, and Defendants are citizens of either California or New York.

8. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims—namely, the design, manufacture, purchase, sale, and shipment of the Delta Barrier—occurred in this district. Further, Defendants Delta and Overseas are subject to personal jurisdiction in this district because they maintain their principal places of business, conduct business, and derive substantial revenue in this district.

### IV. Facts Common to All Counts:

9. On information and belief, Delta has been producing vehicle barricade systems, parking control equipment and guard booths since 1974.

10. On information and belief, Delta has marketed, promoted, tested, and sold vehicle access control equipment such as the Delta Barrier in a variety of settings, including U.S. Embassies, nuclear plants, banks, manufacturing facilities, and government buildings all over the world.

11. On May 30, 2008, Mr. Crawford, General Manager for the Embassy Association Services for Employees, was supervising a delivery of a shipment of Presidential-visit T-shirts for sale at the Embassy store.

12. After Mr. Crawford arrived at B Gate, the security supervisor, Chef-de-Poste Rachid Abdoul, approved Mr. Crawford's entrance through B Gate. Mr. Abdoul then instructed the security guard to open the security devices to allow Mr. Crawford and another store employee, Mr. Rigby, to enter with a pallet of shirts.

3

FIRST AMENDED COMPLAINT

13. In order to get the pallet from the delivery vehicle in the street to the Embassy store, Mr. Crawford, the pallet, and Mr. Rigby, who was handling the pallet, had to pass through the physical security devices of B Gate, which included a vertically-rising gate arm, a row of vertically-retractable bollards, a horizontal dual-leaf swing gate that opened toward entering traffic, and finally the 1,700-pound steel Delta Barrier that vertically raised and lowered out of the driveway pavement.

14. The operation of the swing gate and the Delta Barrier were tied to a single two-button control panel in a manner such that the two devices could not be operated independently of one another.  To change from a "closed" position (gate closed, Delta Barrier up), to an "open" position (gate opened, Delta Barrier down), a security guard would press the "open" button and the gate would open and the Delta Barrier would lower simultaneously.  To change from an "open" position to a "closed" position, a security guard would press the "close" button, and the gate would close and the Delta Barrier would rise simultaneously.  Therefore, a guard could not close the gate without raising the Delta Barrier, and vice versa.

15. Mr. Crawford, Mr. Rigby, and the pallet passed through the vertically-rising gate arm and retractable bollards without incident.  However, Mr. Rigby steered the pallet down one side of the driveway in order to avoid an obstruction in the middle of the driveway, and when the security guard at B Gate opened the swing gate to allow Mr. Crawford, Mr. Rigby, and the pallet to pass, the pallet became lodged behind one leaf of the opening gate, unbeknownst to Mr. Crawford.

16. While Mr. Crawford proceeded through the opening gate, a security guard, in an apparent attempt to dislodge the pallet, pressed the "open" button to open the gate and release the pressure on the trapped pallet.  The guard pressed the button when Mr. Crawford was walking toward, and was approximately only one foot away from, the Delta Barrier.

17. The Delta Barrier rose, and Mr. Crawford struck and began to fall over the top of the rising barrier.  Almost instantly, before Mr. Crawford could even finish falling, the Delta Barrier either collapsed or was lowered, crushing Mr. Crawford's foot under its 1,700 pounds,

causing severe and permanent damage to Mr. Crawford, and thereby causing related damages to his wife, Virginia Crawford.

18. Because the security guard was using the defective two-button operational mechanism, he was unable to stop the Delta Barrier from crushing Mr. Crawford's foot.

19. Mr. Crawford was rushed to the American Hospital of Paris in an Embassy vehicle, where on June 1, 2008, he underwent an initial five-hour surgery on his foot under general anesthesia. Surgeons inserted four rods into his foot. Many of Mr. Crawford's smaller bones were crushed so severely that they were surgically removed, rather than being re-set.

20. Mr. Crawford spent twenty days as an inpatient at the American Hospital as necrosis of his foot progressed. After discharge from the American Hospital, Mr. Crawford returned every two days to have his dressings changed. His foot was examined weekly at the American Hospital by an orthopedic surgeon and a plastic surgeon. Since the Incident, Mr. Crawford has undergone five surgeries attempting to repair the damage to his foot.

21. As a result of the injury to his right foot, Mr. Crawford has been unable to walk without a crutch. The use of the crutch caused him to shift his body weight toward the left side of his body and, consequently, Mr. Crawford has developed carpal tunnel syndrome.

22. Mr. Crawford has undergone two surgeries to repair the carpal tunnel damage to his left hand. This injury is a direct and proximate consequence of the Incident.

23. Due to his injuries, Mr. Crawford was unable to work and was terminated from his employment. Mr. Crawford has suffered significant physical and emotional injuries and mental anguish as a result of the Incident.

24. As a result of the Incident, Mr. Crawford is permanently disabled.

25. On information and belief, the four-button operational mechanism (which Delta had already designed) and/or other operational control mechanism improvements would have allowed the security guard to independently operate the swing gate and the Delta Barrier, thus preventing Mr. Crawford's injuries. The defective design of the two-button operational mechanism meant that the security guard operating the Delta Barrier attempted to close it while Mr. Crawford was still on top of it. In fact, on information and belief, Delta had already

5

redesigned the operation control mechanism of the specific model of the Delta Barrier because, days after the incident, Delta replaced the two-button operational control mechanism with a new four-button unit that would have allowed the security guard to stop the Delta Barrier from crushing Mr. Crawford's foot.

26. On information and belief, the Delta Barrier, including the components constituting the operational control mechanism, and the instruction manuals for the Delta Barrier were designed, manufactured, and sold by Delta, in Delta's facility in Palmdale, California based on the requirements and specifications for a specific security upgrade project provided by Framaco and Overseas. Framaco, by and through Overseas, ordered the Delta Barrier, which was installed by Overseas, by and through Framaco.

27. On information and belief, Delta had knowledge of the high propensity for malfunctions such as the one causing the Incident in Delta barriers like the Delta Barrier. Despite an extensive history of malfunctions, Delta failed to address this risk. Delta failed to alter or redesign the Delta Barrier, operator controls, or operator's manual. These other instances include, but are not limited to, the situations described in *Rodriguez v. Delta Scientific Corp*; *Johnson v. Delta Scientific Corp.*; and *Simpkins v. Delta Scientific Corp*.

V.   Causes of Action:

**COUNT I**

**(Negligent Design:  Delta)**

28. Incorporated herein by reference are all allegations as set forth in paragraphs 1-27 above.
29. Delta negligently designed the Delta Barrier and its operating system.
30. Delta owed a duty to Plaintiffs and all individuals similarly situated to exercise ordinary care in the design of the Delta Barrier, including its inclusion within the overall security system at B Gate, and to not utilize an unreasonably dangerous design.
31. During the Incident, the Delta Barrier was being used in a manner that was foreseeable by Delta, and it was foreseeable that Plaintiffs could be injured by the use of the Delta Barrier.

32. On information and belief, at the time of the Incident, Delta knew of safer alternatives to the two-button operational control mechanism, which included a four-button operational control mechanism that Delta had already designed, and that would have prevented the Incident.

33. On information and belief, Delta barriers like the Delta Barrier had a history of similar malfunctions, yet Delta failed to redesign its product.

34. Delta's failure to properly redesign and/or implement a change, including, inter alia, to the two-button operational controls that simultaneously operated the gate and Delta Barrier constitutes a breach of the above-mentioned duties.

35. As the direct and proximate result of the unreasonably dangerous and defective condition of Delta's product as previously described, Mr. Crawford incurred tremendous physical and mental injury, and is permanently disabled, while Mrs. Crawford suffered loss of consortium.

## COUNT II

### (Negligent Manufacture:  Delta)

36. Incorporated herein by reference are all allegations as set forth in paragraphs 1-35 above.

37. Defendant Delta owed a duty to Plaintiffs and all individuals similarly situated to exercise reasonable care in all aspects of the Delta Barrier's manufacturing process, including design, production, testing, and delivery.

38. During the Incident, the Delta Barrier was being used in a manner that was foreseeable by Delta, and it was foreseeable that Plaintiffs could be injured by the use of the Delta Barrier.

39. On information and belief, at the time of the Incident, Delta knew of safer alternatives to the two-button operational control mechanism, which included a four-button operational control mechanism that Delta had already designed, and that would have prevented the Incident.

40. Delta's failure to conduct reasonable tests and inspections to discover the latent defect(s) in the Delta Barrier constitute a breach of the aforementioned duties.

41. Delta's failure to correct the design and manufacturing defect(s) constitutes a breach of the aforementioned duties.

42. As a direct and proximate result of Delta's breach of its duties, Mr. Crawford incurred tremendous physical and mental injury, and is permanently disabled, while Mrs. Crawford suffered loss of consortium.

## COUNT III

### (Negligent Failure to Warn: Delta, Framaco, and Overseas)

43. Incorporated herein by reference are all allegations as set forth in paragraphs 1-42 above.

44. Defendants Delta, Framaco, and Overseas owed a duty to Plaintiffs and all individuals similarly situated to exercise care and diligence in warning users of the inherent, yet latent, dangers of using a two-button control mechanism to operate both the Delta Barrier and another device such as the swing gate.

45. A reasonably prudent manufacturer, seller, distributor or installer would have warned that a two-button operational control mechanism was unsafe to operate both the Delta Barrier and another device such as the swing gate.

46. It was foreseeable by Defendants that Plaintiffs could be injured by the use of the Delta Barrier in the manner they intended it to be used.

47. Delta, Framaco, and Overseas had reason to believe, including as a result of other incidents involving Delta barriers just like the Delta Barrier, that the use of a two-button operational control mechanism was unsafe to operate both the Delta Barrier and another device such as the swing gate, and that the use of such a two-button control would create an unreasonably unsafe and dangerous condition for individuals and motor vehicles.

48. On information and belief, at the time of the incident, Delta, Framaco, and Overseas knew of, and Delta had already designed, a safer alternative to the two-button operational control mechanism, which included a four-button operational control mechanism that would have prevented the Incident.

49. Delta manufactured and sold the Delta Barrier and its two-button operational control mechanism knowing that the system's users would be unaware of its inherent dangers.

50. Framaco and Overseas bought, sold, distributed, and/or installed the Delta Barrier and its two-button operational control mechanism knowing that the system's users would be unaware of its inherent dangers.

51. Delta, Framaco and Overseas bought, sold, distributed, and/or installed the Delta Barrier and its two-button operational control mechanism without placing a label on the Delta Barrier or the two-button operational control panel warning users of the latent dangers inherent in the product or caused by using the product in the manner intended by Delta, Framaco and Overseas.

52. Delta, Framaco, and Overseas failed to exercise reasonable care to warn users of the Delta Barrier of the dangers and unreasonably unsafe conditions associated with the two-button operational control mechanism.

53. As a direct and proximate result of the Defendants' breaches of their duties, Mr. Crawford incurred tremendous physical and mental injury, and is permanently disabled, while Mrs. Crawford suffered loss of consortium.

## COUNT IV
### (Strict Products Liability for Failure to Warn: Delta, Framaco, and Overseas)

54. Incorporated herein by reference are all allegations as set forth in paragraphs 1-53 above.

55. It was foreseeable by Defendants that Plaintiffs could be injured by the use of the Delta Barrier in the manner they intended it to be used.

56. Defendants Delta, Framaco, and Overseas failed to give adequate warnings of the dangers of the Delta Barrier that were known or knowable in light of the generally recognized and prevailing best scientific knowledge available at the time of the manufacture, sale, distribution, and installation, and/or failed to give adequate instructions to avoid such dangers, which failure rendered the Delta Barrier defective from a failure to warn.

57. On information and belief, at the time of the incident, Defendants Delta, Framaco, and Overseas knew of, and Delta had previously designed, a safer alternative to the two-button operational control mechanism, which included a four-button operational control mechanism that would have prevented the Incident.

58. The Delta Barrier was defective at the time of its design, manufacture, development, production, testing, inspection, endorsement, sale, purchase, distribution, and installation, in that, and not by way of limitation, the Delta Barrier and its warnings, instructions, and directions failed to warn adequately of the dangerous propensities of the Delta Barrier, which risks were known or knowable in light of the generally recognized ad prevailing best scientific knowledge at the time of manufacture, distribution, and installation of the Delta Barrier.

59. Defendants knew or should have known of the defective condition, characteristics, and risks associated with the Delta Barrier.

60. Defendants placed the Delta Barrier into the stream of commerce.

61. Plaintiffs' injuries resulted from the use of the Delta Barrier that was reasonably foreseeable by Defendants Delta, Framaco, and Overseas.

62. At all times herein mentioned, the Delta Barrier was defective and Delta, Framaco, and Overseas knew that the products were to be used by the user without inspection for defects therein.  Moreover, Plaintiffs neither knew, nor had reason to know, at the time of the Incident, of the existence of the aforementioned defects.

63. As the direct and proximate result of the defective condition of the Delta Barrier and Defendants' failures to warn, Mr. Crawford incurred tremendous physical and mental injury, and is permanently disabled, while Mrs. Crawford suffered loss of consortium.

## COUNT V

**(Strict Products Liability for Design Defect: Delta, Framaco, and Overseas)**

64. Incorporated herein by reference are all allegations as set forth in paragraphs 1-63 above.

65. Defendants are strictly liable for the risk of danger inherent in the design of the Delta Barrier because the risk outweighs the benefits of that design because of the gravity of danger posed by the design.  The gravity of the potential harm resulting from the use of Delta's defective products, as previously described, and the likelihood that such harm would occur, outweighed the cost of feasible alternative designs, including providing adequate warning of such potential harm.

66. At the time the Delta Barrier was designed, manufactured, sold, distributed, and/or installed by Defendants, safer alternative designs existed, which included designs other than those actually used, that if Defendants had selected, would have prevented or significantly reduced the likelihood of Plaintiffs' injuries. Such designs were both economically and technologically feasible, and in fact already existed at the time the Delta Barrier was designed, manufactured, sold, distributed, and/or installed by Defendants.

67. On information and belief, at the time of the incident, Defendants Delta, Framaco, and Overseas knew of, and Delta had previously designed, a safer alternative to the two-button operational control mechanism, which included a four-button operational control mechanism that would have prevented the Incident.

68. As the direct and proximate result of the defective condition of the Delta Barrier as designed, manufactured, sold, distributed, and/or installed by Defendants, Mr. Crawford incurred tremendous physical and mental injury, and is permanently disabled, while Mrs. Crawford suffered loss of consortium.

## COUNT VI

### (Loss of Consortium: Delta, Framaco, and Overseas)

69. Incorporated herein by reference are all allegations as set forth in paragraphs 1-68 above.

70. Plaintiffs Mr. and Mrs. Crawford were at all relevant times husband and wife in a valid and lawful marriage. This cause of action is brought on behalf of the Plaintiff who is the spouse of the Plaintiff who was injured by Defendants' negligent and/or wrongful conduct.

71. Prior to suffering the injuries during the Incident caused by Defendants' negligent and/or wrongful conduct, Mr. Crawford was able to and did perform his duties as a husband. After, and as the proximate result of, the injuries that Mr. Crawford suffered in the Incident caused by Defendants' negligent and/or wrongful conduct, Mr. Crawford was and is unable to perform the necessary duties as a husband and the work and service usually performed in the care, maintenance, and management of the family home.

72. As a further proximate result of the injuries that Mr. Crawford suffered in the Incident caused by Defendants' negligent and/or wrongful conduct, Mrs. Crawford lost and was and is

11
FIRST AMENDED COMPLAINT

deprived of the service, love, companionship, comfort, affection, society, sexual relations, and solace that Mr. Crawford previously provided as her husband.

73. Mrs. Crawford suffers loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of Mr. Crawford, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

74. Mrs. Crawford is informed and believes, and therefore alleges, that because of the permanent nature of Mr. Crawford's injuries caused by the Incident, she will in the future continue to lose all or a portion of the aforementioned services, all to her damage in an amount in excess of the jurisdictional limits of this Court, which will be shown according to proof at the time of trial.

## VI.  Prayer for Relief:

WHEREFORE Plaintiffs pray for judgment against Defendants as follows:

75. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered the following injuries and damages:

    a.    General damages in an amount according to proof at time of trial;

    b.    Loss of earnings and impaired earning capacity according to proof at time of trial;

    c.    Medical expenses, past and future, according to proof at time of trial;

    d.    Damages for loss of consortium, care, comfort, society, and companionship according to proof at time of trial;

    e.    Past and future mental and emotional distress, according to proof at time of trial;

    f.    Costs of suit incurred herein to the extent permitted by law;

    g.    Pre-judgment interest as provided by law; and

    h.    Such other and further relief as the Court may deem just and proper.

## VII.  Demand for Jury Trial:

Plaintiffs demand a trial by jury on all issues so triable.

| | |
|---|---|
| 1 | Respectfully submitted, |
| 2  DATED:  April 22, 2011 | By: _____ |
| 3 | CHRISTOPHER W. HELLMICH |
| 4 | chellmich@pattonboggs.com |
|   | California Bar No. 224169 |
| 5 | PATTON BOGGS LLP |
|   | 2550 M Street, NW |
| 6 | Washington, DC 20037 |
|   | Telephone:  202-457-6000 |
| 7 | Facsimile:  202-457-6315 |
| 8 | COUNSEL FOR PLAINTIFFS |
|   | F. JAY CRAWFORD AND |
| 9 | VIRGINIA CRAWFORD |

13

FIRST AMENDED COMPLAINT